**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **GENEVA K. BELLINGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:10CV39MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael Astrue ("Defendant") denying the application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and for Supplemental Security Income ("SSI") benefits based on a disability under Title XVI of the Act, 42 U.S.C. § 1382 et seq., filed by Plaintiff Geneva K. Bellinger ("Plaintiff"). Plaintiff filed a Brief in Support of the Complaint. Doc. 14. Defendant filed a Brief in Support of the Answer. Doc. 17. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 7.

## I.
## PROCEDURAL HISTORY

On February 13, 2007, Plaintiff filed applications for benefits. Tr. 128-37. Plaintiff's claims were denied, and she filed a request for hearing before an Administrative Law Judge ("ALJ"). Tr. 69-70, 77-81. After a hearing held before an ALJ, the ALJ found Plaintiff not disabled through the date of the decision, February 11, 2009. Tr. 6-17. On January 20, 2010, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. As such, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;

> (2) The education, background, work history, and age of the claimant;

> (3) The medical evidence given by the claimant's treating physicians;

> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

> (5) The corroboration by third parties of the claimant's physical impairment;

> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that she has been disabled since November 8, 2006, upon which date she suffered a stroke, while at work. Specifically, Plaintiff alleges that she is disabled due to stroke, asthma, arthritis, anemia, stitches in her neck, heel spurs, carpal tunnel pain, confusion, impaired memory, depression/anxiety, back and neck pain, foot pain, and "the after effects of a stroke." Doc. 14 at 1; Tr. 164. Plaintiff was born in 1957. She completed eighth grade and worked, in the past, as a cashier, department manager, retail clerk, stocker, and waitress. After considering Plaintiff's testimony, medical records, and credibility, the ALJ found that Plaintiff had the following severe impairments: history of coronary artery disease and cerebrovascular accident, status post right ICA stenting, obesity, degenerative disc disease and degenerative joint disease. In regard to Plaintiff's history of calcaneal spur and bilateral chronic plantar fasciitis, the ALJ found that Plaintiff had good results from a September 2006 surgery and that this condition was non-severe. The ALJ also found that Plaintiff did not have a mental impairment or combination of mental impairments that met or equaled the criteria for a listed impairment; that she had no more than mild restrictions in activities of daily living, social functioning, or maintaining concentration, persistence, or pace; that she had no repeated episodes of decompensation; and that, in terms of mental functioning, she had no limitation in the ability to perform basic work activities. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met a listed impairment; that she had the RFC to perform the full range of light work, with certain restrictions; that Plaintiff was capable of performing her past relevant work as a retail clerk; that, alternatively, based on the testimony of a VE, Plaintiff

maintained the ability to perform a wide range of sedentary jobs which are available in the economy in significant numbers; and that, therefore, Plaintiff is not disabled.

Plaintiff contends that the ALJ's decision is not based on substantial evidence for the following reasons: the VE's testimony that Plaintiff can perform her past relevant work as a sales clerk is flawed in that the VE failed to consider Plaintiff's plantar fasciitis and her impaired memory and reasoning ability; the ALJ did not find Plaintiff's plantar fasciitis severe and include it in a hypothetical posed to the VE; the ALJ did not include limitations regarding Plaintiff's concentration and reasoning, as noted by K.P.S. Kamath, M.D., in the hypothetical posed to the VE; the ALJ failed to fully develop the record regarding Plaintiff's plantar fasciitis; the ALJ erred in finding that Plaintiff had the RFC for light work "when she was limited to sedentary work"; and, because Plaintiff is only able to perform sedentary work and given her limited education, lack of transferrable skills and age (50), the ALJ should have found that Plaintiff is disabled.

A.      **ALJ's Credibility Determination:**

The ALJ in the matter under consideration found Plaintiff not fully credible. As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole, and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750;  Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each

Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's daily activities and concluded that they are inconsistent with her allegations of disabling symptoms and limitations. Tr. 15. In particular, the ALJ considered that Plaintiff was able to perform simple household chores, go grocery shopping, and drive an automobile. The court notes that Dr. Kamath reported that Plaintiff said that, during the day, she "piddle[d] around the house doing household chores such as laundry, cleaning, and cooking." Tr. 822. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d

at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen, 75 F.3d at 439-31 (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Second, the ALJ considered that no examining or treating physician has ever placed any specific long term work-related restrictions upon Plaintiff or expressed the opinion that she is disabled. In this regard, the ALJ considered that, on December 8, 2008, Dr. Karshner indicated that Plaintiff maintained the ability to perform light work activity. The ALJ further considered that the medical evidence did not indicate that Plaintiff was unable to ambulate effectively or perform fine and gross movements effectively on a sustained basis due to any underlying musculoskeletal impairment. The ALJ further considered that Plaintiff recovered a within a short time from her stroke. Tr. 14-15. A lack of objective medical evidence detracts from Plaintiff's subjective complaints. While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor

in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987). The court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Third, the ALJ considered that Plaintiff's history of minimal conservative mental health treatment was inconsistent with her allegation of a disabling impairment. In particular, the ALJ considered that treating sources never recommended that Plaintiff seek specialized treatment for her anxiety and depression and that Plaintiff never received any psychiatric or psychological treatment. Indeed, the record reflects that Plaintiff received medication from her general practitioner for depression and anxiety, but the record does not reflect that she was ever referred to a specialist. Additionally, the ALJ noted that the evidence did not document that Plaintiff had ever been denied medical treatment due to a lack of finances. Tr. 11-12. Seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). As such, the court finds that the ALJ properly considered Plaintiff's minimal medical treatment and that his decision in this regard is supported by substantial evidence.

Fourth, the ALJ considered that, to the extent Plaintiff's activities are limited, they are limited by her choice and not by any apparent medical proscription. Tr. 14. A claimant's limitation which is self-imposed rather than a medical necessity is a basis upon which an ALJ may discredit a claimant's alleged limitation. See Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007) ("The issue is not whether [the claimant] was credible in testifying that he naps each weekday afternoon he is not working. The issue is whether his heart condition compels him to nap each afternoon."); Brunston v. Shalala, 945 F. Supp. 198, 202 (W.D. Mo. 1996 ("Plaintiff also testified that she spent part of the day lying down; however, no physician stated that such a need existed. If plaintiff was not lying down out of medical necessity, then that indicates that she was lying down by choice."). Further, where there is a lack of documentation regarding a claimant's allegation that she needs to take daily naps, an ALJ may conclude that the claimant chose to nap. See Schroeder v. Sullivan, 796 F. Supp. 1265, 1270 (W.D. Mo. 1992) (holding that the claimant's need to take naps was not documented in the record and because the claimant failed to complain to his doctors about drowsiness, "contradict[ed] his assertion that he must nap during the day"; "It is as likely that Plaintiff chooses to nap at times he might otherwise choose to remain awake."). As such, the court finds that the ALJ's decision in this regard is consistent with the case law and Regulations and that it is supported by substantial evidence.

Fifth, the ALJ considered that Plaintiff's anxiety and depression were controlled with medication. Tr. 12. Dr. Kamath reported that Plaintiff said that medication helped her symptoms related to her depression "significantly." Tr. 821. Additionally, Dr. Kamath opined that Plaintiff's depression was "well under control." Tr. 822. Conditions which can be controlled by treatment are not disabling. See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be

considered disabling);Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). ALJ The court finds, therefore, that the ALJ properly considered that Plaintiff's anxiety and depression were controlled by medication and further finds that substantial evidence supports the ALJ's conclusion in this regard.

Sixth, the ALJ considered Plaintiff's demeanor at the hearing. In particular the ALJ considered that, at the hearing, Plaintiff remembered information and testified appropriately. Tr. 14. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record

as a whole with his personal observations. As such, the court finds that the ALJ properly considered his personal observations and that his decision, in this regard, is supported by substantial evidence.

**B.      ALJ's Consideration of the Medical Evidence, Including Plaintiff's Plantar Fasciitis, and her Concentration and Reasoning:**

**1.      Plantar Fasciitis:**

Plaintiff contends that the ALJ erred in finding her plantar fasciitis non-severe.  In regard to Plaintiff's plantar fasciitis, the ALJ considered that Plaintiff had a history of bilateral chronic plantar fasciitis; that she underwent surgery for this condition in September 2006, "with good results"; and that evidence failed to document further complaints of  lower extremity pain secondary to plantar fasciitis; and that, therefore, this condition was non-severe. Tr. 11-12.  First, although Plaintiff's medical records reflect that, on several occasions, after her surgery, she complained of foot pain, medical records that reflect such complaints are recitations of Plaintiff's subjective complaints. Tr. 806, 822. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

Second, to the extent the ALJ erred in regard to his reference to Plaintiff's complaints of foot pain, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999).          Third, although Plaintiff testified at the hearing that she had foot pain and that her feet swelled, the court has found above, to the extent the ALJ found Plaintiff no credible, that the ALJ's decision is supported by substantial evidence.

Fourth, although Plaintiff's foot surgeon noted that because she had gained 100 pounds he could not "guarantee cessation of her symptoms," Plaintiff's records do not reflect, subsequent to her

surgery, that there was a physical cause for her alleged foot pain. Tr. 296. Significantly, Plaintiff underwent the foot surgery prior to her alleged onset date and she did not seek treatment for foot pain again until April 26, 2007, when she presented complaining of bilateral lower extremity swelling, "as well as back pain whenever she [had] quite a bit of activity." On this date, Plaintiff was encouraged to loose weight for her extremities and back pain and to wear "good supportive shoes when she [was] attempting any exercise or walking activity." Tr. 470. Subsequent to April 2007, the record does not reflect that Plaintiff sought treatment for foot pain. Significantly, when Plaintiff was seen by Matthew W. Karshner, M.D., for a consultive examination, in December 2008, Dr. Karshner reported that Plaintiff was able to walk without a limp and was not in any distress during heel/toe walking. Tr. 808. The court finds, therefore, that the ALJ's decision finding that Plaintiff's plantar fasciitis non-severe is supported by substantial evidence.

To the extent Plaintiff contends that the ALJ should have developed the record further in regard to her plantar fasciitis, an "ALJ is required to order medical examinations and tests only if the medical records presented to [her] do not give sufficient medical evidence to determine whether the claimant is disabled." Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.1986)). See also Landess v. Weinberger, 490 F.2d 1187, 1189 (8th Cir. 1974); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (holding that the duty to develop the record further only arises where "a crucial issue is undeveloped" or when an undeveloped record is unfair or prejudicial). The court has found that the ALJ's decision that Plaintiff's plantar fasciitis was non-severe is based on substantial evidence. The court further finds that there was sufficient evidence for the ALJ to reach this conclusion. Under such circumstances, the ALJ was not required to order that Plaintiff undergo a consultive examination for plantar fasciitis.

## 2. Mental Impairments:

In regard to Plaintiff's alleged mental impairments, including to her alleged limitations relating to her concentration and reasoning, the ALJ considered that treatment notes reference a diagnosis of anxiety disorder and depression with anxiety. As discussed above, the ALJ considered Plaintiff's lack of specialized psychological or psychiatric treatment. Further, the ALJ considered that Dr. Kamath, an examining psychiatrist, diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") of 60, which suggests no more than moderate to mild limitations in all areas of functioning.[1] Additionally, the ALJ considered that Plaintiff was pleasant and cooperative with relevant, coherent, and appropriate speech. The court notes that Dr. Kamath also reported that Plaintiff's thought process did not indicate "looseness of association, flight of ideas, thought insertion, thought blocking or bizarre delusions"; that Plaintiff said she felt depressed "now and then"; that she denied any feelings of hopelessness, helplessness, and suicidal ideations; that she said she use to have occasional panic attacks "but not anymore"; that Plaintiff's depression was "well under control"; that here ability to relate to other people was good"; that she had some degree of social isolation and a mild degree of constriction of interests and habits; that she could comprehend and follow instructions and perform simple repetitive tasks; and that her ability to cope with stress and pressures of routine work activity was fair. Tr. 821-22. Significantly, as discussed above, Plaintiff told Dr. Kamath that "medication ha[d] helped her symptoms significantly." See Medhaug, 578 F.3d at 813; Schultz, 479 F.3d at 983;

---

[1]     Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

Estes, 275 F.3d at 725. As discussed above, the ALJ also considered Plaintiff's testimony regarding her ability to perform a variety of daily activities. See Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883; Onstead, 962 F.2d at 805. The court further notes that James Spence, Ph.D., a State agency reviewing psychologist reviewed the evidence and opined that Plaintiff did not have a severe mental impairment based on the evidence of record. See 20 C.F.R. § § 404.1527(f), 416.927(f) (providing that the opinions of nonexamining sources. including those of State agency medical and psychological consultants, may be considered).

Pursuant to 20 C.F.R. §§ 404.1520a and 416.920a, the ALJ determined that Plaintiff had no more than mild restrictions in activities of daily living, social functioning, or maintaining concentration, persistence, or pace, and that she had no repeated episodes of decompensation of extended duration. The ALJ concluded that, in terms of mental functioning, Plaintiff did not have any limitation in the ability to perform basic work activities and that she did not have a mental impairment or combination of mental impairments which met or equaled a listed impairment. Tr. 12.

The court notes that Plaintiff is not disabled merely because she may have a mental impairment. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § § 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then

requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

The court further notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

Upon considering whether Plaintiff had a mental impairment which met or equaled a listing and upon determining whether she had any limitations in her ability to perform basic work activities as a result of a mental impairment, the ALJ in this matter considered the medical evidence, as required by the first step of a mental impairment analysis. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (holding that while an ALJ is not limited to considering medical evidence of a mental impairment, the ALJ is required to consider at least some supporting evidence from a professional); Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1). Consistent with the Regulations, after considering the medical evidence, the ALJ proceeded to consider Plaintiff's functional limitations as evidenced by activities of daily living; her social functioning; her persistence or pace; and her deterioration or decompensation in work or work-like settings. See 20 C.F.R. § 404.1520a(b)-(c). The court finds that the ALJ's determination that Plaintiff does not have a mental impairment or combination of mental impairments which meet a listing and that she had no limitation in the ability to perform basic work activities, in terms of mental functioning, is supported by substantial evidence and is consistent with the Regulations and case law.

### 3.    Coronary Artery Disease:

In regard to Plaintiff's history of coronary artery disease, the ALJ considered that Plaintiff had a "cerebrovascular accident" in November 2006; that, in December 2006, Plaintiff underwent right internal carotid artery stent placement due to a 90% occlusion; that, since the stent placement, the stent has remained widely patent; and that the symptoms which Plaintiff suffered following her stroke, mild aphasia and mild upper extremity weakness, resolved in January 2007. Additionally, in January 2007, Umesh K, Sharma, M.D., reported that Plaintiff had recovered completely from the symptoms of her stroke and had no new symptoms. Tr. 222. The court finds that the ALJ's determination that

Plaintiff's symptoms related to coronary artery disease were resolved by January 2007 is supported by substantial evidence.

### 4. Chronic Back and Neck Pain:

In regard to Plaintiff's complaints of chronic back and neck pain, the ALJ considered that Plaintiff saw Dr. Karshner on December 8, 2008, at the request of the ALJ and that Dr. Karshner reported that Plaintiff complained of chronic back and neck pain and aphasia, "but [that Plaintiff] demonstrated full range of motion with 4/5 strength on the right and 5/5 strength on the left"; that Plaintiff's tone on the right was good; that she was able to squat, arise, and heel and toe walk without distress; that Dr. Karshner diagnosed Plaintiff with degenerative disc disease of the lumbar spine, degenerative joint disease of the cervical spine, lumbar spine, and left knee; and that Dr. Karshner "indicated that [Plaintiff] maintained the ability to perform light work activity." Tr. 13. As suggested by Plaintiff, Dr. Karshner did opine that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. Dr. Karshner was not Plaintiff's treating doctor, but rather saw Plaintiff for an evaluation for purposes of Social Security. As such, Dr. Karshner's opinion was not entitled to controlling weight. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians."). To the extent that Dr. Karsher reported that Plaintiff had limitations walking, he also reported that she had no limp or loss of balance. As such, limitations placed on Plaintiff by Dr. Karsher regarding her ability to walk are inconsistent with Dr. Karsher's own findings. In any case, Dr. Sharma, who was Plaintiff's treating doctor, opined that Plaintiff's gait and coordination were normal. Tr. 223. See Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (holding that the opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record'") (quoting 20 C.F.R. § 404.1527(d)(2)(2000). Moreover, the ALJ did incorporate some of Dr. Karshner's findings in his determination of Plaintiff's RFC, in that Dr. Karshner stated that Plaintiff had some back pain upon percussion and that Plaintiff could never tolerate unprotected heights. Tr. 808, 817. In this regard, the ALJ found that Plaintiff should avoid exposure to full body vibration and unprotected heights. To the extent the ALJ erred in regard to his consideration of Dr. Karshner's opinion, such an error does not require reversal where the ALJ's determination is supported by substantial evidence. See Senne, 198 F.3d at 1067. The court finds, therefore, that the ALJ gave proper weight to the opinion of Dr. Karshner and that the ALJ's decision, in this regard, is supported by substantial evidence. The court further finds that the ALJ's consideration of Plaintiff's medical records is supported by substantial evidence and that his determination regarding the severity of Plaintiff's alleged impairments is based on substantial evidence.

**C.      Plaintiff's RFC:**

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments.

Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id.

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records,

observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish [his or] her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

The ALJ in the matter under consideration determined Plaintiff's RFC only after considering all the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). Upon making his RFC assessment, the ALJ identified Plaintiff's functional limitations and restrictions, and then assessed her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737;

<u>Harris v. Barnhart</u>, 356 F.3d 926, 929 (8th Cir. 2004). Specifically, the ALJ concluded that Plaintiff

could perform the full range of light work[2] except that she had the following restrictions:

> Occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and
> never climb ladders, ropes or scaffolds. [She] should avoid exposure to full-body
> vibration such as using a jack hammer or driving a truck or tractor and should avoid
> exposure to fumes, odors, gases, poor ventilation, and all hazards including
> unprotected heights and dangerous moving machinery.

Tr. 12.

To the extent Plaintiff contends that the ALJ erred in finding that she can perform light work

and that she can only perform sedentary work, no doctor ever opined that Plaintiff was limited in that

regard. In fact, Dr. Karshner specifically found, consistent with the requirements of light work, that

Plaintiff could walk and stand a total of six hours in an eight hour work day. Tr. 814. Additionally,

in January 2007, it was reported that Plaintiff had normal muscle tone in all extremities and that her

gait and coordination were normal. Tr. 223. It was also reported, in December 2008, that Plaintiff

had 4/5 grip strength on the right with "fair" effort, full grip strength on the left, 4/5 leg strength on

the right, 5/5 leg strength on the left, normal gait, and normal balance. Tr. 807-808. Further, there

is no evidence of record, other than Plaintiff's subjective complaints, that she is limited to sedentary

work. The court finds, therefore, that the ALJ's determination of Plaintiff's RFC is based on

substantial evidence and that it is consistent with the case law and Regulations.


**D.      Vocational Expert Testimony:**

---

[2]      The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at
a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).
Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a
workday, the full range of light work requires standing or walking, off and on, for a total of
approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251,*6 (SSA).

After determining Plaintiff's RFC and the requirements of her past relevant work, the ALJ found that Plaintiff can perform her past relevant work as a retail clerk and as a waitress as those jobs are generally performed. As such, the ALJ was not necessarily required to obtain the testimony of a VE. See 20 C.F.R. § 404.1560; Harris, 45 F.3d at 1194; Sanders, 983 F.2d at 823.   Nonetheless, the ALJ obtained the testimony of a VE to determine whether there were jobs in the economy which a person with Plaintiff's non-exertional limitations could perform. See Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992).

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988).   The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).   Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Even though a VE does not specifically recite factors in his answers, an ALJ can properly assume that the VE "framed his answers based on the factors the ALJ told him to take into account."

Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991). Where an ALJ's hypotheticals included all of a claimant's impairments as supported by the record, and the expert limited his opinion in this regard, an ALJ properly relies on the VE's testimony. Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).

The ALJ in the matter under consideration found that Plaintiff's ability to perform light work was compromised by her non-exertional limitations, as set forth in the RFC which the ALJ assigned to Plaintiff. The court has found that the ALJ's RFC determination is supported by substantial evidence. The ALJ posed a hypothetical to the VE which included limitations which the ALJ found credible. Under such circumstances, the ALJ could properly rely on the VE's testimony. See id. The VE testified that there is work in the national and State economy, existing in substantial numbers, which a person of Plaintiff's *age*, education, work experience, and RFC can perform, including unskilled gate guard duty jobs. The court finds that the testimony of the VE constitutes substantial evidence supporting the ALJ's decision that there is work that Plaintiff can perform. Robson, 526 F.3d at 392. The court further finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that it is consistent with the Regulations and case law. Plaintiff incorrectly states that her age was not considered in determining that there is work which she can perform, as the VE specifically took Plaintiff's age into consideation.

Because the court has found that the ALJ's determination, based on the testimony of a VE, that Plaintiff can perform work other than her past relevant work is based on substantial evidence, the court need not address Plaintiff's arguments which address the ALJ's consideration of her past relevant work.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in the Complaint and Brief in Support of Complaint are **DENIED;** Docs.1, 14

**IT IS FURTHER ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

<u>Mary Ann L. Medler</u>
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>3rd</u> day of January, 2011.